UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMPSON HINE LLP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 10-cv-01877 (ABJ) |
| SMOKING EVERYWHERE INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Thompson Hine LLP ("Thompson Hine") brings this diversity action against Smoking Everywhere, Inc. ("SE") its CEO, Elicko Taieb, and EC Distribution, Inc. ("EC Distribution") alleging breach of contract and fraudulent transfer arising out of defendants' failure to pay legal fees to plaintiff. Defendants SE and Taieb have moved to dismiss or, in the alternative, for summary judgment under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and, in part, 12(b)(6) for failure to state a claim in Counts III, IV, and V. The motion alternatively requests transfer of venue under 28 U.S.C. §1404(a). Because plaintiff fails to show that the Court has personal jurisdiction over SE or Taieb, the Court will grant the motion to dismiss for lack of personal jurisdiction without reaching the issues of failure to state a claim or venue.

## BACKGROUND

Defendant SE, a Florida corporation with its principal place of business in Florida, is an importer and distributor of a product known as "electronic cigarettes ("e-cigarettes") and e-

cigarette accessories. Am. Compl. ¶ 3.[1] Defendant Taieb, who resides in Florida, was the majority owner, president, and CEO of SE at all times relevant to this complaint.[2] *Id.* ¶ 4. Plaintiff Thompson Hine is a law firm, an Ohio limited liability partnership with its headquarters and principal place of business in Ohio. *Id.* ¶ 2. It maintains an office in Washington, D.C. *Id.*

On March 19, 2009, SE entered into a retainer agreement with Thompson Hine which specified that the firm would represent SE "in connection with the review and development of legal arguments pertaining to the sale and distribution of its electronic cigarette product." *Id.* ¶ 9. In accordance with the agreement, Thompson Hine represented SE in a dispute with the FDA regarding the importation and classification of e-cigarettes. *Id.* ¶ 11–14. Pursuant to a second retainer agreement dated September 30, 2009, Thompson Hine also defended SE and Mr. Taieb in his individual capacity in an action brought against them by the Attorney General of Oregon alleging violations of Oregon's Unlawful Trade Practices Act. *Id.* ¶ 16–19.

Plaintiff filed its amended complaint on November 9, 2011, alleging that defendants failed to pay for its services pursuant to these two agreements. [Dkt. # 27]. Count I alleges breach of contract by SE; Count II alleges breach of contract by Taieb; Counts III, IV, and V

---

1   Upon consent of the parties, the Court construes defendants' motion to dismiss – filed as a motion to dismiss the claims in plaintiff's original complaint – as applying to the claims in plaintiff's amended complaint. *See* Notice, [Dkt. # 25]; Minute Order, November 9, 2011. The Court will also construe the attachments to the original complaint as attachments to the amended complaint.

2   Plaintiff contends that SE is currently being run by the third defendant in this case, EC Distribution. Unedited Tr. at 25–26.

allege fraudulent transfer in violation of D.C. Code sections 23-3104, 23-3105(a), 23-3105(b) respectively; and Count VI alleges successor liability as to EC Distribution.[3]

## STANDARD OF REVIEW

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 455–56 (D.C. Cir. 1990). In order to do so, "the plaintiff must allege specific acts connecting the defendant with the forum." *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction . . . ." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). However, "the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010), quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (alteration in original). Any factual discrepancies should be resolved in favor of the plaintiff. *Crane*, 894 F.2d at 455–56. But, the Court need not treat all of the plaintiff's jurisdictional allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). "Instead, the court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *In re Papst Licensing*, 590 F. Supp. 2d at 98 (internal quotation marks and citation omitted).

---

3   Since the instant motion argues for dismissal of only defendants SE and Taieb, this opinion will not address the Court's personal jurisdiction over EC Distribution. SE and Taieb are hereinafter referred to as the "defendants."

## ANALYSIS

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1346 (D.C. Cir. 2000). It first determines "whether jurisdiction over a party is proper under the applicable local long-arm statute." *United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) (citation omitted). If so, it examines "whether [jurisdiction] accords with the demands of due process." *Id.*

The District of Columbia's long-arm statute provides, in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> (1) transacting any business in the District of Columbia . . . .

D.C. Code § 13-423 (1981). This "transacting any business" clause has been construed to be co-extensive with due process. *See Ferrara*, 54 F.3d at 828. Due process is satisfied if the plaintiff establishes that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). This requires that the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 296, 297 (1980). "[N]otions of fundamental fairness require that the defendant's contacts with the forum be evaluated qualitatively rather than quantitatively." *Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C. 1981), citing *Hanson v. Denkla*, 357 U.S. 235 (1958), *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957). Thus, to establish personal jurisdiction under the "transacting any business" clause, a plaintiff must prove that the defendant transacted business in the District, the claim arose from that business, and the business

constituted minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 70 (D.D.C. 1992), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

To show that a defendant's business in the District of Columbia constitutes sufficient minimum contacts with the District, it is insufficient for a plaintiff to merely prove that the defendant entered into a contract here. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 7 (D.D.C. 2009). Rather, the contract must have a "substantial connection" to the District "which often exists where the contract is to be performed, in whole or in part, in D.C." *Exponential Biotherapies, Inc.*, 638 F. Supp. 2d at 7–8, citing *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

Courts have focused on a number of considerations in determining whether a defendant's business in the District fulfills the minimum contacts requirement, and the following factors can be distilled from a review of the applicable case law:

- Did the defendant voluntarily and deliberately reach into the District to contract with a firm or company here? *Mouzavires*, 434 A.2d at 995–97; *Fisher v. Bander*, 519 A.2d 162, 164 (D.C. 1986); *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49–50 (D.D.C. 1994).

- Did the defendant communicate with the law firm or the plaintiff in the District? *Mouzavires*, 434 A.2d at 997; *Fisher*, 519 A.2d at 164; *Lans v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp. 2d 240, 271 (D.D.C. 2011); *Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 435–36 (D.D.C. 1992).

It is important to note that these first two factors alone may not be sufficient. *Exponential Biotherapies, Inc.*, 638 F. Supp. 2d at 7; *Lans*, 786 F. Supp. 2d at 271. The courts have also gone on to consider:

5

- Did the defendant attend meetings in the District? *Fisher*, 519 A.2d at 162; *Hummel v. Koehler*, 458 A.2d 1187, 1190–91 (D.C. 1983); *Lans*, 786 F. Supp. 2d at 271; *Dooley*, 803 F. Supp. at 335–36; *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 630 F. Supp. 1311, 1313 (D.D.C. 1986).

- Did the defendant hold the D.C. attorney out as his representative? *Dooley*, 803 F. Supp. at 435–36.

- Did the engagement last for an appreciable period of time? *Hummel*, 458 A.2d at 1190–91.

- Did the defendant contemplate or was it aware that the work to be performed pursuant to the contract would be performed in the District? *Mouzavires*, 434 A.2d at 997; *Law Offices of Jerris Leonard, P.C.*, 630 F. Supp. at 1313.

- Did the defendant derive economic benefit from the employment of the plaintiff? *Hummel*, 458 A.2d at 1191.

- Is the harm caused by the defendant felt in the District? *Lans*, 786 F. Supp. 2d at 271; *Fisher*, 519 A.2d at 162; *Staton v. Looney*, 704 F. Supp. 303, 304–05 (D.D.C. 1989).

The courts have been particularly attentive to the final factor, generally finding that it did not offend due process to bring a party who hired, but then failed to pay, a local lawyer into the local courts in a suit for non-payment.

Here, plaintiff argues that defendants transacted business in the District by engaging Thompson Hine, and defendants submit that the limited contractual relationship is insufficient to support jurisdiction.  Since the briefs submitted on both sides were generally conclusory, the Court undertook a detailed review of each of the exhibits attached to the complaint and those attached to the memoranda filed in support of and in opposition to the motion to dismiss.  It has considered the exhibits and declarations submitted by both parties in the light most favorable to plaintiff.  *See Crane*, 894 F.2d at 456.  After considering all of these materials in light of the key factors identified in the applicable precedents, the Court finds that plaintiff has not met its burden to demonstrate that defendants' transactions here satisfy the minimum contacts analysis.

**The evidence**

At the outset, the Court notes that the complaint describes the action as "an action for damages arising out of Defendants SE and Taieb's breaches of their contracts to pay Thompson Hine for legal services." Am. Compl. ¶ 1. And, while Thompson Hine maintains an office in Washington, D.C., the complaint asserts that "Thompson Hine LLP is an Ohio limited liability partnership with its headquarters and principal place of business [in Ohio]." *Id.* ¶ 2. In other words, the plaintiff that is suing for the money that was not paid to it is the Ohio partnership, not a District of Columbia law firm. *Cf. Lans*, 786 F. Supp. 2d at 279 (District of Columbia law firm); *Law Offices of Jerris Leonard, P.C.*, 630 F. Supp. at 1313 (same).

**1. The first engagement letter between Thompson Hine and SE. Ex. A to Am. Compl.**

The Court first examined the exhibits attached to the complaint. The March 17, 2009 initial retainer agreement, Ex. A, is printed on Thompson Hine letterhead bearing the Atlanta address. The letter was sent to and accepted by Taieb in his capacity as President of the company, and the client is identified as SE, not Taieb individually. It is signed by Walt Addison Linscott – a Thompson Hine attorney in the Georgia office – and the only attorney named in the letter or for whom an individual billing rate is provided is Mr. Linscott. The body of the letter states, in relevant part: "We have been engaged to represent Smoking Everywhere, Inc., in connection with the review and development of legal arguments pertaining to the sale and distribution of its electronic cigarette product." Nothing in the letter indicates that this legal work was to be performed in Washington, D.C., although the record does reflect that ultimately, the engagement involved the filing of a lawsuit in federal court here. Am. Compl. ¶ 11–13.

The engagement letter goes on to state: "If our firm performs additional work on behalf of Smoking Everywhere, Inc., the provisions of this engagement letter will apply . . ." and, "[i]n order to provide the highest quality legal services in an efficient, cost-effective manner, we involve attorneys and legal assistants at our firm with the experience appropriate to the task at hand." In other words, the letter contemplates a possibly broader engagement, performed by a team of attorneys drawn from the firm as a whole, but it makes it clear that the staffing of the matter will be in the hands of the firm, and not the client. So there is nothing about this engagement letter that gives rise to the conclusion that either defendant – and certainly not Taieb – transacted business in the District of Columbia.[4]

### 2. The second engagement letter between Thompson Hine, SE, and Taieb. Ex. C to Am. Compl.

By contrast, the second engagement letter, dated September 30, 2009, emanates from Thompson Hine's Washington, D.C. office. Ex. C to Am. Compl. It is signed by Kip Schwartz, a lawyer in the firm's D.C. office, and it contains his billing rate as well as the billing rates of two other Thompson Hine lawyers in the D.C. office.[5] The clients are both the company and Taieb individually, although the letter is addressed to Ray Story, the SE Vice President who signs the letter on the company's behalf. Taieb signs it as well. So, at this point, both

---

4   At the December 15, 2011 status hearing before this Court, plaintiff argued that defendants "knew full well" that lawyers from the D.C. office would be supplying a substantial part of the services. Unofficial Tr. at 20-21, 23. The Court notes that plaintiffs may not rest on bare allegations or conclusory statements alone to satisfy their burden of proof. *Frieman v. Lazur*, 925 F. Supp. 14, 21 (D.D.C. 1996), *citing Crane*, 894 F.2d at 456. However, even if plaintiff had supplied evidence showing that defendant SE (the only defendant involved in the first engagement) knew that lawyers from the D.C. office would be working on the matter, that showing would be weighed in the minimum contacts analysis, but it would not be enough to alter the outcome. *See* Unedited Tr. at 22 (Plaintiff's offer to supplement the record).

5   Neither letter contains the common language identifying the attorney who will be the partner responsible for the matter.

defendants are knowingly reaching into the District to retain D.C. lawyers, but the important question is: for what? The letter states: "This letter confirms our understanding that we have been engaged to represent Smoking Everywhere, Inc. and Mr. Taieb in connection with the defense of an action brought by the Attorney General of Oregon . . . alleging violations of Oregon's Unlawful Trade Practices Act." Furthermore, the letter refers to the matter elsewhere as "the Oregon lawsuit." So, defendants were not hiring the law firm to represent them in a D.C. matter, but it is a fair inference (and one that the Court is required to make) that defendants knew that these attorneys worked in the District, and that it was contemplated that they would be performing some or all of the work necessary to carry out this engagement in the District of Columbia. This exhibit is the strongest piece of evidence pointing to the defendants' contacts with the forum: they hired lawyers who worked here to perform work here.

> **3. The final bill that Thompson Hine issued to SE, which includes the work done under both engagement letters. Ex. B to Compl.**

Plaintiff attached one document to the complaint reflecting the amount owed the firm. The bill as of May 31, 2010 identifies Linscott – the Georgia lawyer – as the "supervising attorney" for the account. Like the first engagement letter, it is printed on the Georgia office's stationary. It contains a summary description of the work done: "Regulatory Compliance," which refers to work under the first engagement letter, and "AG Proceedings," which refers to work under the second engagement letter. Importantly, then, this is the final bill for *both* engagements, and it was issued by the Georgia office on behalf of an Ohio partnership with offices in several cities. While the Court can infer, based on the declarations submitted in opposition to the motion and the second engagement letter, that the outstanding balance includes fees for D.C. lawyers' time, and for work performed in the District, this exhibit does not actually supply the Court with any evidence of what is often found to be the strongest factor for a local

9

plaintiff: that the harm occasioned by the defendants' non-payment was felt in the District of Columbia.

### 4. Declaration of Kip Schwartz [Dkt. # 12-2].

Mr. Schwartz is a partner in Thompson Hine's D.C. office, and his declaration was submitted in opposition to the motion to dismiss. Schwartz Decl. ¶ 2. According to his declaration, he and Mr. Heyer – another Thompson Hine D.C. attorney – "began assisting" Linscott with SE's regulatory matter in April 2009. *Id.* ¶ 5. (Linscott was engaged in March). Schwartz states that "early in the first engagement, it was anticipated by all concerned that we would have to file suit against the Food & Drug Administration within the District of Columbia to obtain the necessary relief for SE." *Id.* ¶ 4. He also states that the Vice President of SE, Ray Story, came to D.C. for at least two meetings, attended the hearings, and maintained regular contact by email and phone including weekly phone conferences with Heyer and Schwartz. *Id.* ¶¶ 8–9. In addition, Taieb came to one meeting in D.C. and attended the hearing in District Court that day. *Id.* ¶ 10. Schwartz also states that the work for the Oregon action on behalf of SE and Taieb was done in the District. *Id.* ¶ 14. The declaration does not contain any allegations concerning meetings or communications with Taieb or anyone at SE related to the Oregon matter.

### 5. Declaration of Eric Heyer [Dkt. # 12-2].

Heyer is an associate in Thompson Hine's Washington, D.C. office. Heyer Decl. ¶ 2. Like the Schwartz declaration, Heyer's declaration states that he and Schwartz "assist[ed] Walt Linscott" with the regulatory matter on behalf of SE and that they did their work in the District. *Id.* ¶¶ 4–5. Heyer also states that Story, the SE Vice President, met with "Schwartz, Linscott, and me" in the District on two occasions, and attended hearings on those dates – May 15, 2009

and August 17, 2009. *Id.* ¶ 7. In other words, Taieb and Story, the SE representatives, came to the District only once and twice, respectively; they did not come on any date other than a hearing date; and they attended no meetings that were not meetings with the Georgia lawyer that they had engaged to handle the matter.

The declaration states further that Story, Schwartz, and Heyer exchanged about fifteen emails and had weekly telephone conferences about the D.C. litigation. *Id.* ¶ 8. Heyer says nothing about telephone conferences about the Oregon matter. He avers that Taieb came to the District for the one meeting, and that "Mr. Taieb and [Heyer] also exchanged at least ten emails related to the FDA action and the Oregon action." *Id.* ¶ 9. No copies of emails are attached to the declaration to indicate what the emails to Taieb were about, who initiated them, or how many of them related to either of the two matters.

Heyer states that the second engagement letter came about when Story called him in the D.C. office and asked that Thompson Hine defend SE and Taieb in Oregon. *Id.* ¶ 12. The declaration contains no allegations of any meetings with Taieb – or anyone else from SE – in the District in furtherance of the second contractual relationship concerning the Oregon matter.

**6. Affidavit of Elicko Taieb. [Dkt. # 10-2].**

Taieb claims that Story hired and dealt with a Georgia lawyer. Taieb Aff. ¶ 11. He admits that he came to the District to watch a legal proceeding, but claims that he was not a party or a witness in that proceeding. *Id.* ¶ 3–4. The Court notes that this statement is somewhat incomplete since it does not reveal that Taieb came to the District specifically to watch the proceeding in which his company was the plaintiff. The affidavit does not describe any contacts with the firm on the Oregon matter.

11

### 7. Proceedings and records in *Smoking Everywhere v. FDA*, No. 09-cv-771 (D.D.C. 2009).

Since the lawyers' declarations make reference to the federal court action in this District in which Thompson Hine represented SE, the Court has taken judicial notice of the proceedings and records in that action, *Smoking Everywhere v. FDA*, No. 09-cv-771 (D.D.C. 2009). *See Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 74–75 (D.D.C. 2010) ("[A] court may take judicial notice of related proceedings and records in cases before the same court." Internal quotation marks omitted.).

In the district court action, Thompson Hine filed a verified complaint and a motion for preliminary injunction on SE's behalf against the FDA. *See* No. 1:09-cv-771 [Dkt. # 1]. At the December 15, 2011 status hearing in the instant case, plaintiff argued that this legal representation in federal court in D.C. satisfied another personal jurisdiction factor because it provided defendant SE with a significant economic benefit, *i.e.* SE was successful in its effort to obtain a preliminary injunction against the FDA and therefore, it could continue manufacturing its e-cigarettes. Unedited Tr. at 23–24. (Again, Taieb as an individual was neither a party to the engagement letter or the lawsuit). But the review of the docket does not demonstrate how much of this benefit flowed to SE from the attorneys in the forum: Mr. Linscott – the Georgia attorney – moved to be admitted *pro hac vice* in the matter [Dkt. # 4], and he personally argued the motion for preliminary injunction in court on May 15, 2009.[6] *Id.* [Dkt. # 34]. Schwartz and Heyer also entered appearances in that case, and they attended the preliminary injunction hearing. *Id.* The Court has not been provided with evidence showing who participated in the drafting, editing, or approval of the pleadings in the case. But even if one assumes that the D.C.

---

6    The court granted the preliminary injunction motion and the case settled without briefing or oral argument by the parties on the merits. *See* No. 1:09-cv-00771.

lawyers played a significant role in that process, the Court's own records show only that SE hired a Georgia attorney to handle the regulatory matter, that he brought in attorneys from the D.C. office to assist him, and that he argued on behalf of SE in the federal court proceedings in which SE ultimately prevailed.

> 8. **Affidavits of Elicko Taieb from *Smoking Everywhere v. FDA*, No. 09-cv-771 (D.D.C. 2009). Exs. A and B to Heyer Decl.**

These declarations confirm that Taieb was the individual who verified the preliminary injunction complaint on behalf of SE, which Thompson Hine filed on behalf of SE in federal court in D.C. Plaintiff cites no authority that would suggest that simply signing a pleading in federal court on behalf of an institutional party constitutes transacting business in that jurisdiction.

## Discussion

Since this is a close case, the Court is required to pay particular attention to the burden of proof, which as a matter of law, rests with the plaintiff. After assessing all of the evidence under that rubric, the Court concludes that the evidence that the plaintiff law firm has proffered is insufficient to meet its burden with respect to either defendant.

As to SE, the corporate defendant, there is no evidence that it reached into the District of Columbia to create the first contractual relationship. SE entered into the initial contract with a Georgia lawyer in the Georgia office of the Ohio partnership. While plaintiff provides evidence that the first engagement ultimately involved a proceeding in federal court in D.C., the Georgia lawyer appears to have served as lead counsel on that case, and the only two meetings that took place in the District in connection with that engagement were actually meetings with him, along with the D.C. lawyers assisting him, held on the dates of court hearings. In other words, the client did not come to D.C. to meet with the D.C. lawyers without Linscott. Furthermore, it was

the Georgia lawyer who expanded the team into the forum by calling upon the attorneys he selected to "assist" him on the matter. *See Mouzavires*, 434 A.2d at 995 ("[P]roper application of the minimum contacts formula requires a consideration not only of whether a nonresident defendant has sufficient contacts with the forum, but also of whether those contacts are voluntary and deliberate, rather than fortuitous."); *Cellutech, Inc.*, 871 F. Supp. at 49–50 (finding no jurisdiction under the "transacting any business" clause where the plaintiff itself brought in D.C. counsel to conduct negotiations).

For the second engagement, Story, acting on behalf of SE, did hire the D.C. lawyers in particular, so he did reach into the forum to make a contract, and he (and therefore, SE) clearly contemplated that lawyers in D.C. would be doing the work there. But the questions remain: is that sufficient to constitute a "substantial connection" with the District? And who has the burden to persuade a Court divided in its mind that it does? The engagement letter did not retain the D.C. lawyers for a matter in the D.C. courts, but the subject matter of the engagement was an Oregon proceeding. More important, plaintiff has provided no evidence of any meetings in the District or even telephone conversations with either defendant concerning the Oregon engagement after the contract was signed. And, other than Heyer's non-specific declaration that he exchanged 10 emails with Taieb about <u>both</u> the FDA and the Oregon matters, there was no evidence provided of even electronic communications with either defendant concerning the second engagement.

While contacts are measured qualitatively, rather than quantitatively, *Mouzavires*, 434 A.2d at 995, the relatively short duration of the representation on the Oregon matter is also significant. The invoice attached to the complaint as Exhibit B shows only that only eight of the nineteen outstanding invoices were issued for work done on the Oregon matter, and only six of

those appear to have been sent after the second engagement letter with the D.C. lawyers was executed. So, the second engagement did not even last a year. *Cf. Hummel*, 458 A.2d at 1190–91 (noting that contacts spanned more than a year). There is no allegation that there was even one meeting in the District attended by a representative of SE or by Taieb personally regarding the Oregon matter, and there was no evidence provided that would indicate that payment was to have been made in the District, or that an attorney other than Linscott was the partner with supervisory authority over the representation. *Cf. Mouzavires*, 434 A.2d at 997 (finding specific jurisdiction over an out-of-state law firm under the "transacting any business" clause because it hired a D.C. firm to assist with litigation in Florida by providing technical expertise in patent and trademark law, the parties agreed that the work would be done primarily in the District, the work was done primarily in the District, the parties communicated by phone and mail, and the out-of-state-firm delivered partial payment to the D.C. firm in the District); *Hummel*, 458 A.2d 1190–91 (finding jurisdiction under the "transacting any business" clause because appellant visited the District of Columbia on business-related matters to attain appellees' assistance, was present here on several occasions, and derived economic benefit from his employment of appellees.).

The strongest argument for a local plaintiff is usually that it would be fair for defendants to be expected to be haled into court here if they did not pay what was owed to a law firm here. *See Staton v. Looney*, 704 F. Supp. 303, 304–05 (D.D.C. 1989); *Lans*, 786 F. Supp. 2d at 271; *Fisher*, 519 A.2d at 162. But absent a more particularized showing, the rationale in those cases does not necessarily apply to every national law firm with an office here, and the Court finds it significant that the only bill with which the Court has been provided does not demonstrate that the funds were due to be paid here or that the non-payment caused a harm here. Ex. B to Compl.

Finally, the case for personal jurisdiction is even weaker as to Taieb. Taieb was not a party to the first engagement, and the showing for jurisdiction as to him turns almost exclusively on his execution of the second engagement letter. Taieb attended only one meeting held in D.C., and that was a meeting with Linscott, held in connection with a hearing in the proceeding to which only the company was a party, and in furtherance of the engagement to which only the company was a party. To the extent that there were regular telephone communications with the D.C. lawyers concerning the D.C. federal court proceeding, they were with Story, and not with Taieb.[7] Furthermore, Taieb's one-time action of verifying the complaint that was filed in federal court cannot qualify as a substantial connection with the District from which this action arises. *See Frieman*, 925 F. Supp. at 23–24, citing *Burger King Corp.*, 471 U.S. at 475 & n.18 (finding that a one-time act that creates only an attenuated affiliation with a forum is insufficient to establish personal jurisdiction). Plaintiff has not provided any evidence that Taieb attended any meetings in the District related to the Oregon matter for which he engaged the D.C. lawyers or that he communicated with those lawyers by phone related to those matters. And the Court cannot assess the subject matter, the extent, or the import of Heyer's email correspondence with him because not one email has been provided.

Therefore, the Court concludes that plaintiff has not met its burden to prove that the Court has personal jurisdiction over either defendant.

---

[7] Plaintiff also argues that the alter ego theory gives rise to personal jurisdiction over Taieb, but the Court would have to find that it has jurisdiction over SE in order to assert jurisdiction over Taieb as an alter ego of SE. *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction . . . the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." Internal quotation marks omitted.)

**CONCLUSION**

Because the Court cannot find that defendants SE and Taieb's engagement of Thompson Hine provides the minimum contacts with the District that are required for the Court to retain jurisdiction over them, the Court will grant defendants' motion to dismiss or, in the alternative, for summary judgment on the ground that it lacks personal jurisdiction over defendants SE and Taieb under Rule 12(b)(2), and deny it as to the other grounds as moot.  A separate order will issue.

*/s/ Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE:  January 6, 2012